UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| BRANDON A. WHITBY, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:16CV01765 SNLJ |
|  | ) |  |
| JASON LEWIS, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## **MEMORANDUM AND ORDER**

This case is before the Court on petition under 28 U.S.C. § 2254 for writ of habeas corpus. The State has filed a response in opposition. Petitioner has not filed a reply.

Petitioner Brandon Whitby is an inmate at the Southeast Correctional Center in Charleston, Missouri. In 2009, Whitby was convicted of second-degree murder and child abuse after he beat a two-year-old boy to death. A St. Louis City jury found him guilty and the court sentenced him to life in prison for the murder charge, consecutive to seven years for the child abuse charge. In his petition, Whitby seeks to raise five grounds for relief. All of his claims have previously been heard and denied by the Missouri Court of Appeals. Because the state court reasonably denied Whitby's claims, this Court will deny his petition.

### Statement of Facts

On direct appeal, the Missouri Court of Appeals summarized the relevant facts as follows:

As of 31 July 2009, Appellant had been living for about a month in an apartment with his girlfriend, Shamecca Brown, and her three children, three-year-old L.R., two-year-old M.D. (Victim), and ten-month-old L.S. The night of 31 July 2009, L.R. was staying at a relative's house, and the two other children, along with Ms. Brown and Appellant, went to sleep in the living room.

The following morning, Ms. Brown woke with considerable pain in her kidneys, and she was experiencing some bleeding. She called her mother, Cora Spaulding, who told her to call an ambulance. Ms. Brown asked her mother to come watch the children, and Ms. Spaulding said she would do so but to have Appellant watch them until she could get there. Ms. Spaulding left her house shortly thereafter. Ms. Brown woke Appellant and asked him to watch the children while she went to the hospital. He agreed, and Ms. Brown called for an ambulance.

Paramedics arrived at 10:55 a.m. Two paramedics entered the apartment to examine Ms. Brown. Both testified that L.S. and Victim were present in the living room and that the paramedics were able to see the children and their faces. Neither paramedic observed anything unusual about the children or saw any visible injuries on them, and both paramedics observed the children to be acting appropriately for their ages. One paramedic recalled that Victim was particularly friendly, and the other paramedic recalled waving to Victim and Victim waving back. The paramedics decided to take Ms. Brown to the hospital, and as they left at 11:10 a.m., one of the paramedics locked the door behind her and checked to ensure it was locked.

While on her way to the apartment, Ms. Spaulding received a call from Appellant, who told her that Victim had a seizure. Ms. Spaulding told him that Victim did not have seizures, and Appellant did not respond. Shortly thereafter, Appellant called Ms. Spaulding again and told her he was going to take Victim to the hospital.

An officer responding to a call "for a sudden death" arrived at the apartment at around 11:30 a.m. to find Victim laying on the floor and paramedics treating him. The officer, Matthew Burle, observed that Appellant was the only adult present in the apartment other than the paramedics. Officer Burle also observed L.S., noting he was not moving, just staring, and that there were bruises on his face and around his eye. Officer Burle contacted his supervisor, who came to the apartment and who then contacted the child division. An officer from the child abuse division came to the scene, observed the bruises on L.S. and that he was atypically lethargic, and took L.S. to the hospital.

At the hospital, doctors were unable to resuscitate Victim when he arrived with paramedics. After his death, officials brought Ms. Brown to identify Victim, and

> she testified that Victim had a long scar across his face that had not been there when she last saw him at the apartment.
>
> Both Victim's treating doctor and the pathologist who performed Victim's autopsy testified. These doctors observed various bruises all over Victim's body, including a pattern of rounded, loop-like bruises. There was testimony that these bruises were inflicted within 24 hours of Victim's death. Additionally, Victim had internal injuries including a skull fracture, bleeding in the front of his head, brain swelling, hemorrhaging in his retina and thymus, and ruptured blood vessels on the surface of his heart and where his lungs connected to his windpipe. The pathologist concluded Victim's injuries were the result of blunt force trauma, and were not the result of an accidental fall but were inflicted at the hands of another. The pathologist determined these injuries were inflicted within four hours of his death, and that Victim would have experienced an altered consciousness or a lack of consciousness almost immediately upon the infliction of his brain injuries. She stated he would not have been able to interact with other people, smile or wave after his injuries were inflicted.
>
> Police searched the apartment later that day, and they found a gun inside a toy car, ammunition and heroin under the mattress of the bed Appellant was laying in when paramedics first arrived, and a duffel bag full of drug paraphernalia. Police also found a cord from a video game system on top of some trash bags outside the back door of the apartment. The pathologist who testified had compared the cord in evidence to Victim's contusions and stated they were consistent with the shape of the cord.
>
> The jury found Appellant guilty of murder in the second degree and of felony child abuse of Victim. The court sentenced Appellant to consecutive prison terms of life and seven years, respectively.

(Resp. Ex. E at 1–4).

## Discussion

Whitby's first and second claims were previously raised on direct appeal. Whitby's third, fourth, and fifth claims were previously raised during state post-conviction review. In the state proceedings, the Missouri Court of Appeals denied all of Whitby's claims on the merits. Claims that have been previously adjudicated on the merits in state court "shall not be granted" relief unless the state court's decision

3

contradicted or unreasonably applied clearly established federal law or resulted in an unreasonable determination of the facts. 28 U.S.C. §2254(d).

**I. The trial court did not err in allowing the prosecutor's closing argument. The Missouri Court of Appeals's decision denying this claim is entitled to deference under 28 U.S.C. §2254(d).**

In his first claim for relief, Whitby argues that the trial court erred in allowing the prosecutor to argue facts not in evidence and in allowing the prosecutor to make impermissible *ad hominem* attacks. Specifically, Whitby challenges the following two passages of the prosecutor's argument:

> He just kept beating him. Look at that, look at those photos. Relentlessly, strike after strike. And then he also beat [L.S.]. Again showing no mercy, no mercy for [L.S.]'s tender age of nine-months-old. That's how [Victim] spent the last few moments of his life, alone at the hands of a monster. [L.S.], in less than one year on our Earth, we couldn't protect him from that monster who showed no mercy for one of our kids. . . How do we know it was the defendant that was the monster in the apartment that night? Because Dr. Sandomirsky testified and told us it was and science doesn't lie.
>
> DEFENSE: Objection. That was not the evidence. Testimony that [Appellant] caused those injuries was not testified to by the doctors.
>
> THE COURT: You can rephrase that.

(Tr. at 390–391). Later the prosecutor went on to argue about how the Victim's injuries were inflicted:

> And he hits him again . . . strikes out with the amount of force on [Victim]'s body consistent with being in a car accident. And he did it again and again and again with absolutely no mercy. You can't even count the number of strikes on those pictures, they overlap. . . . And they're on different parts of his body, which means one of two things, [Victim] was either rolling in pain on the floor as he struck over and over and over again or [Victim], mobile enough to get up ran, tried to flee for his life –

4

> DEFENSE: Objection, Your Honor. There's no evidence of either of those facts.
>
> THE COURT: She's arguing inference. Overruled. . . .
>
> STATE: Running for his life, his two-year-old life. And that man hunted him like an animal, chasing him and striking him as he ran, because they're on his stomach, they're on the front of his face, they're on his back, they're on his neck, they're down his back and on his buttocks. With every strike he made a decision, I'm going to kill this inconvenience . . . . And then, . . . when that didn't work . . . [h]e made a decision to say this isn't getting the result I want, I'm setting down this cord and I'm going to another method. And . . . we won't be able to say exactly what that method is. . . . But we know the amount of force it took. . . .A blow so forceful like he was in a car accident, a moving vehicle. And he didn't strike him once and he didn't strike him in the same spot over and over. He struck him to the front of his head, to the side of his head, to the back of his head. Or instead of turning [Victim] around . . . he picked him up and threw him.
>
> DEFENSE: Objection, Your Honor. There is no evidence of any of this.
>
> THE COURT: I think all she's arguing is just inferences . . . .You obviously have the right to argue counter-inferences. . . .
>
> DEFENSE: But the car accident, too?
>
> THE COURT: . . . even the doctor testified like a car accident. . . The objection is overruled.

(Tr. at 397).

On claims alleging improper closing argument by the prosecutor, a federal court can only grant habeas relief to a state prisoner if "the prosecution's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The Eighth Circuit has interpreted this to mean that courts can only grant federal habeas relief if the "prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would

have sua sponte declared a mistrial." *Sublett v. Dormire*, 217 F.2d 598, 600 (8th Cir. 2000) (quoting *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir.1999).

First, the trial court properly determined that the State was allowed to argue inferences about the evidence presented at trial. (Resp. Ex. E at 8). *See State v. Brown*, 337 S.W.3d 12, 14–15 (Mo. 2011); *see also U.S. v. Mullins*, 446 F.3 750, 760 (8th Cir. 2006) (prosecutor may argue "the evidence and reasonable inferences that may be drawn from it . . .[and] may use colorful language and argue a personal interpretation of the evidence.) (internal quotations omitted).

The prosecutor argued that Victim was running away or rolling on the ground as he was being beaten. (Resp. Ex. E at 8). The prosecutor noted the placement of the bruises and abrasions on Victim. (Resp. Ex. E at 8). She concluded that the bruises on Victim's back, neck, and buttocks indicated he could have been running away as he was beaten; or the fact that Victim had bruises all of his body meant he had been rolling around on the floor while being beaten. (Resp. Ex. E at 8). The prosecutor's comments were reasonable inferences from the evidence, and the trial court did not abuse its discretion by allowing them. Moreover, the prosecutor's comments were not "so inflammatory and outrageous" as to amount to a constitutional violation.

Second, the prosecutor's comments that whoever beat the two-year-old victim to death was a "monster" who "hunted" a child "like an animal" were not improper ad hominem attacks. (Resp. Ex. E at 9). Here, the prosecutor used the analogy of a monster hunting an animal to describe her argument that the perpetrator chased Victim and beat him as he was running away. (Resp. Ex. E at 9). The prosecutor attempted to argue that

6

Whitby was that monster based on the evidence. (Resp. Ex. E at 9). The Missouri Court of Appeals found that the prosecutor's arguments were not so inflammatory that they had an impact on the jury's verdict, especially considering that Whitby was acquitted of other related charges. (Resp. Ex. E at 9). In context, the prosecutor's arguments were not improper ad hominem attacks, and they do not violate the high standard necessary to warrant constitutional review of closing argument.

**II. The evidence at trial was sufficient to support the jury's verdict. The Missouri Court of Appeals's decision denying this claim is entitled to deference under 28 U.S.C. §2254(d).**

In his second claim, Whitby argues that the evidence at trial was insufficient for the jury to find beyond a reasonable doubt that Whitby, rather than someone else, committed these crimes. In *Jackson v. Virginia*, the Supreme Court found that a federal habeas petitioner can receive relief if she shows that, based on the evidence at trial, "no reasonable trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). On direct appeal, the Missouri Court of Appeals applied the same standard, and found that there was sufficient evidence for the trial court to find that Whitby abused and murdered Victim. (Resp. Ex. E at 9–10).

At trial, the jury heard evidence that when Ms. Brown was present in the apartment with the paramedics, Victim was interacting with them and had no visible injuries. The jury heard medical testimony that Victim would not have been able to wave or interact after receiving his injuries; thus they could have reasonably inferred that Victim had not suffered the injuries that led to his death until after Ms. Brown left with

7

the paramedics. The jury also heard evidence that the door was locked when the paramedics and Ms. Brown left, and that the second set of paramedics arrived approximately 20 minutes later. Officer Burle testified that Whitby was the only adult present with the children. The jury could reasonably have inferred from these facts that no one else would have been able to enter the apartment in those 20 minutes between the two sets of paramedics. The jury heard evidence that the children could not have inflicted the injuries upon each other and that the injuries were not a result of an accident. All of this was sufficient circumstantial evidence for a jury to infer beyond a reasonable doubt that Whitby was the only one who could have inflicted Victim's injuries, leading to his death.

Whitby does not argue that the facts found by the jury or the Missouri Court of Appeals were determined unreasonably. The Missouri Court of Appeals correctly applied the sufficiency standard of *Jackson v. Virginia*. The court's decision that there was sufficient evidence to convict Whitby of murder and child abuse is entitled to deference under 28 U.S.C. §2254(d).

**III. Trial counsel was not ineffective for failing to adequately cross-examine Victim's mother. The Missouri Court of Appeals's decision denying this claim is entitled to deference under 28 U.S.C. §2254(d).**

In his third claim for relief, Whitby argues that his trial counsel was ineffective for failing to adequately cross examine Shammeca Brown, the Victim's mother. Whitby alleges that counsel should have asked Brown about the fact that she regularly used

8

physical discipline in raising her children. Whitby argues that this testimony could have been used to show that Brown, not Whitby, was responsible for Victim's death. The Missouri Court of Appeals applied the proper standard for evaluating whether counsel was ineffective. (Resp. Ex I at 5–6); *see Strickland v. Washington*, 466 U.S. 668 (1984). To succeed, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistances." *Strickland*, 466 U.S. at 689. A claim for ineffective assistance of counsel must show that counsel's conduct fell below reasonable professional standards and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Here, the Missouri Court of Appeals found that Whitby's trial counsel could not be ineffective for failing to elicit evidence that would not have been admissible at trial. (Resp. Ex. I at 6–7) (citing *McIntosh v. State*, 413 S.W.3d 320, 331 (Mo. 2013)). Even if Whitby's trial counsel had asked Ms. Brown about whether she physically disciplined her kids, that testimony would have been inadmissible under Missouri's evidentiary rules because there was no evidence that Ms. Brown could have been directly connected to the murder of Victim. (Resp. Ex. I at 7) (citing *State v. McKay*, 459 S.W.3d 450, 458 (Mo. App. E.D. 2014).

Under Missouri law, "[w]hen the evidence is merely that another person had opportunity or motive to commit the offense, or the evidence is otherwise disconnected or remote and there is no evidence that the other person committed an act directly connected

9

to the offense, the minimal probative value of the evidence is outweighed by its tendency to confuse or misdirect the jury." *Id*. "In order for Defendant to successfully claim Brown was responsible for Victim's death, Defendant must offer some other evidence that Brown was directly connected to this crime." *Id*.

At Whitby's trial, there was no evidence to suggest that Brown had the opportunity to assault Victim or cause Victim's death. As discussed in Section II, the evidence at trial overwhelmingly showed that Victim was attacked after Brown left her home, while Victim and his sibling were alone with Whitby. Any testimony that Whitby regularly disciplined her kids would have been inadmissible under Missouri law. (Resp. Ex. E at 7). This Court must accept that determination of Missouri law because it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Because testimony about whether Whitby physically disciplined her children would have been inadmissible, trial counsel cannot be ineffective for failing to elicit that testimony on cross-examination. The Missouri Court of Appeals's decision denying relief is entitled to deference under 28 U.S.C. 2254(d).

**IV. Trial counsel was not ineffective for failing to call two character witnesses. The Missouri Court of Appeals's decision denying this claim is entitled to deference under 28 U.S.C. §2254(d).**

In his fourth ground for relief, Whitby argues that trial counsel was ineffective for failing to call two witnesses who would purportedly testify that Brown had a reputation in the community for abusing her children. As in Whitby's third ground for relief, he argues

10

that their testimony could have helped establish that Brown, not Whitby was responsible for Victim's death.

The Court should reject Brown's fourth ground for relief for the same reasons discussed in Section III. Any testimony suggesting that Brown was responsible for Victim's death would not have been admissible under Missouri evidentiary rules because the evidence at trial overwhelmingly showed that Brown could not have been directly connected to Victim's injuries. (Resp. Ex. E at 7–8). This Court must accept the Missouri Court of Appeals's determination of state evidentiary law. *Estelle*, 502 U.S. at 67–68. Accordingly, trial counsel cannot be ineffective for failing to call witnesses who could not have offered admissible testimony at trial.

**V. Trial counsel was not ineffective for failing to object to the prosecutor's closing arguments. The Missouri Court of Appeals's decision denying this claim is entitled to deference under 28 U.S.C. §2254(d).**

In his fifth ground for relief, Whitby argues that trial counsel was ineffective for failing to object to alleged "ad hominem attacks" during the prosecutor's closing argument (the prosecutor's same comments also discussed in Section I). As discussed in Section I of this response, the Missouri Court of Appeals reasonably found that the prosecutor's closing arguments were not so inflammatory that they had an impact on the jury's verdict. (Resp. Ex. E at 9).

Additionally, the Missouri Court of Appeals determined on direct appeal that the prosecutor's comments did not require reversal because the trial court did not abuse its discretion or plainly err in allowing them. (Resp. Ex. E at 9). Accordingly, Whitby could

not have suffered prejudice from trial counsel's failure to object. The prosecutor's comments did not require reversal; therefore, there is no reasonable probability that the outcome of Whitby's trial or appeal would have been different if counsel had objected to the prosecutors alleged "ad hominem attacks." The Missouri Court of Appeals's decision denying relief is entitled to deference under 28 U.S.C. §2254(d).

## CONCLUSION

For these reasons, Whitby's petition for a writ of habeas corpus, #1, is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 31st day of August, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE